UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JOHNATHON FLORES, MARK KASICK, RAMON SALDIVAR, and LUIS VILLARREAL, § § § § | | |
| Plaintiffs, § § | | |
| v. § § | CIVIL ACTION NO. 1:12-cv-247 | |
| JAAAGS L.L.C. d/b/a CARWASH PLUS, and ARTURO KALIFA, § § § § | | |
| Defendants. § § | JURY DEMAND | |

**PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES**

Now comes Plaintiffs' counsel, Texas RioGrande Legal Aid, and attorneys Kelsey Snapp and Kathryn J. Youker, attorneys with the public interest law firm Texas RioGrande Legal Aid ("TRLA"), to file this motion, pursuant to Fed. R. Civ. P. 56(d)(2), for an award to Plaintiffs of $57,160.00 in attorneys' fees and $3,615.19 in costs and expenses against Defendant Arturo Kalifa and Defendant JAAAGS L.L.C. d/b/a/ Carwash Plus for the work performed by TRLA. In support of this motion, Plaintiffs' counsel would show the Court as follows:

**Statement of Issues and Summary of Argument**

1.   In this action, four workers employed by Defendants sought unpaid wages and damages for violations of the Plaintiffs' rights under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), or, in the alternative, the Texas Minimum Wage Act, Tex. Lab. Code § 62 *et seq.* ("TMWA"), and on the Defendants' breach of their employment contract with the

Plaintiffs, or, in the alternative, under the doctrine of *quantum meruit*.  Plaintiffs were successful on their claims, as reflected in the Court's Entry of Judgment on December 5, 2013.  *See* Civ. Dkt. No. 64.

2.	Pursuant to 29 U.S.C. § 216(b), litigants who successfully prosecute claims under the Fair Labor Standards Act are entitled to an award of attorneys' fees and expenses. Likewise, plaintiffs who prevail under the Texas Minimum Wage Act, which mirrors the Fair Labor Standards Act, shall recover their attorneys' fees and expenses.  *See* Tex. Lab. Code Ch. 62.205. Moreover, a person may recover reasonable attorneys' fees for a successful claim for *quantum meruit*.  *See* Tex. Civ. Prac. & Rem. Code § 38.001(1)-(3); *Cordova v. Southwestern Bell Yellow Pages, Inc.*, 148 S.W.3d 441, 446 (Tex. App. – El Paso 2004, no pet.); *Olivares v. Porter Poultry & Egg Co.*, 523 S.W.2d 726, 731 (Tex. Civ. App. -- San Antonio 1975, no writ).

## Legal Standard

3.	In determining an appropriate award of attorneys' fees, the Court may consider a number of factors.  *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).  The *Johnson* factors are as follows: (1) the time and labor required, (2) the novelty and difficulty of the question, (3) the skill required to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relations with the clients, and (12) awards in similar cases. 488 F. 2d. at 717.

4. While one of the factors the Court may consider is the result obtained, the fee award should not simply be proportionate to the result obtained.[1] Courts frequently have granted attorneys' fees in employment and civil rights lawsuits for amounts several times greater than the damages recovered by the plaintiffs.[2] The nature of civil rights litigation, which often entails small damage awards, justifies these disproportionate fees.[3] Aside from any monetary recovery, much of the value of these cases arises from their ability to expose illegal conduct and enforce rights.[4]

5. Furthermore, courts have specifically recognized that the nature of FLSA cases is such that attorneys' fees will often greatly exceed the amount of the judgment.[5] The purpose of the FLSA's fee-shifting provision is to encourage attorneys to act as private attorneys general to

---

[1] "[The Fifth Circuit has] previously declined to adopt a rule of proportionality between damages and attorney's fees." *Hollowell v. Orleans Reg'l Hosp. LLC,* 217 F.3d 379, 392 (5th Cir. 2000).

[2] *See, e.g.*, *City of Riverside v. Rivera*, 477 U.S. 561 (1986) (granting attorneys' fees of $245,456 on a §1983 claim with damages of $33,350); *Lucio-Cantu v. Vela*, 239 Fed. Appx. 866 (5th Cir. 2007) (FLSA; $3,349.29, $52.50, and $1,2960.00 in damages for three plaintiffs; $51,750 in attorneys' fees); *Cox v. Brookshire Grocery Co.*, 919 F.2d 354 (5th Cir. 1990) (FLSA: $1,181 in damages; $9,250 in attorneys' fees); *Lirette v. Delchamps, Inc.*, CIV. A. 95-4086, 1997 WL 358124 (E.D. La. June 25, 1997) (FLSA: $2,535 in damages; $23,684 in attorneys' fees).

[3] *Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989) ("Congress has elected to encourage meritorious civil rights claims because of the benefits of such litigation for the named plaintiff and for society at large, irrespective of whether the action seeks monetary damages."); *City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986) ("Congress did not intend for fees in civil rights cases . . . to depend on obtaining substantial monetary relief."); *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 426 (2nd Cir. 1999) ("Congress enacted fee-shifting statutes . . . to encourage private enforcement of civil rights statutes, to the benefit of the public as a whole").

[4] *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) ("Regardless of the form of relief he actually obtains, a successful civil rights plaintiff often secures important social benefits that are not reflected in nominal or relatively small damages awards."); *A.J. v. Kierst*, 56 F.3d 849, 863 (8th Cir. 1995); *Wilcox v. City of Reno*, 42 F.3d 550, 556-57 (9th Cir. 1994); *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1306-09 (11th Cir. 2001).

[5] *Powell v. Carey Interen., Inc.,* 547 F.Supp.2d 1281, 1286 (S.D. Fla. 2008) ("Given the nature of claims under the FLSA, it is not uncommon that attorneys' fee requests will exceed the amount of judgment in the case."); *Singer v. City of Waco*, 324 F.3d 813, 830 (5th Cir. 2003).

prosecute violations of the FLSA,[6] to ensure that FLSA plaintiffs recover all of the pay they were owed, without having to split it with an attorney,[7] and because these cases often involve claims for relatively small amounts of lost wages that would not be economically feasible without the possibility of being awarded market-rate attorneys' fees.[8]

---

[6] *See*, e.g., *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 426 (2nd Cir. 1999) ("Congress enacted fee-shifting statutes . . . to encourage private enforcement of civil rights statutes, to the benefit of the public as a whole"); *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.*, 732 F.2d 495, 503 (6th Cir. 1984) (attorneys' fees in FLSA cases "encourage the vindication of congressionally identified policies and rights"); *Heder v. City of Two Rivers*, 255 F. Supp. 2d 947, 952 (E.D. Wis. 2003) (attorneys' fees in FLSA cases "exist[] to enable plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail and, thereby, to help ensure enforcement of the substantive provisions of the FLSA").

[7] *See*, e.g., *Maddrix v. Dize*, 153 F.2d 274, 275-76 (4th Cir. 1946) ("Congress intended that the wronged employee should receive his full wages plus the penalty without incurring any expense for legal fees or costs"); *Zegers v. Countrywide Mortg. Ventures, LLC*, 569 F. Supp. 2d 1259, 1267 (M.D. Fla. 2008) ("Because the FLSA was intended to provide workers with the full compensation they are due under the law, requiring a plaintiff to pay his or her attorney a fee in addition to what the Court determines is a reasonable fee for the attorneys' services is contrary to Congressional intent.").

[8] *See, e.g.*, *Howe v. Hoffman-Curtis Partners Ltd., LLP*, 215 Fed. Appx. 341 (5th Cir. 2007) (finding that "[g]iven the nature of claims under the F.L.S.A., it is not uncommon that attorney fee requests can exceed the amount of judgment in the case by many multiples" and granting attorneys' fees of $129,805.50 with damages of $23,357.30); *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir. 1984) (attorneys' fees are necessary in FLSA cases to "to insure effective access to the judicial process [for] plaintiffs with wage and hour grievances"); *Clover v. Shiva Realty of Mulberry, Inc.*, 10 CIV. 1702 RPP, 2011 WL 1832581 (S.D.N.Y. May 13, 2011), aff'd sub nom. *Clover v. Gobindram*, 479 F. App'x 402 (2nd Cir. 2012) (quoting approvingly the relevant language in *Howe v. Hoffman-Curtis Partners*); *Estrella v. P.R. Painting Corp.*, 596 F. Supp. 2d 723, 727 (E.D.N.Y. 2009) (attorneys' fees in FLSA cases are "designed in part to secure legal representation for plaintiffs whose wage and hour grievances were too small, in terms of expected recovery, to create a financial incentive for qualified counsel to take such cases under conventional fee arrangements"); *Ayres v. 127 Restaurant Corp.,* No. 96-1255, 1999 WL 328348, at *2 (S.D.N.Y. May 21, 1999) ("This reasoning is particularly applicable to wage and hour cases, where the recoveries usually are not high. . . . Without the possibility of a fee award, employees who earn the income of a waiter would not be able to obtain quality legal representation."); *Holyfield v. F.P. Quinn & Co.*, 90 C 507, 1991 WL 65928 (N.D. Ill. Apr. 22, 1991) (holding that "[g]iven the nature of claims under the FLSA, it is not uncommon that attorneys' fee requests will exceed the amount of the judgment in the case," and awarding $7,000 in fees and costs on a judgment of $921).

**Plaintiffs' Fees**

6.     As set forth in the attached affidavits of Kelsey Snapp and Kathryn J. Youker, Texas RioGrande Legal Aid undertook representation of the prevailing Plaintiffs. *See* Exhibits A and C.  TRLA and its attorneys conducted all phases of the district court litigation, including depositions, interrogatories and document requests, and a three-day trial.

7.     Texas RioGrande Legal Aid has expended more than 290 hours on the case, as specifically set forth in the attached affidavits and respective time records of Kelsey Snapp and Kathryn J. Youker. *See* Exhibits A-D.  This expenditure of time was entirely reasonable and necessary.

8.     Mr. Snapp seeks compensation at a rate of $150 per hour. This is a reasonable hourly rate in light of the usual and customary rates charged by attorneys for litigation in South Texas, Plaintiffs' success on the merits, and Mr. Snapp's level of expertise and experience.  At that hourly rate, Mr. Snapp's fee request comes to $28,725.00.

9.     Ms. Youker seeks compensation at a rate of $275 per hour.  This is a reasonable hourly rate in light of the usual and customary rates charged by attorneys for litigation in South Texas, Plaintiffs' success on the merits, and Ms. Youker's eleven years of experience litigating Fair Labor Standards Act cases on behalf of low-wage workers.  At that hourly rate, Ms. Youker's fee request comes to $28,435.00.

10.     Plaintiffs have submitted the affidavit of Carlos Hernandez, an experienced Plaintiffs' employment lawyer in this community, stating that the hourly rates used by Mr.

Snapp and Ms. Youker are appropriate for attorneys of the experience and expertise of Plaintiffs' counsel in the relevant community. *See* Exhibit E.

11. As the Court considers the reasonableness of the rates requested in this motion for award of attorneys' fees, Plaintiffs ask the Court to recognize the Supreme Court's holding in *Blum v. Stenson*, 465 U.S. 886 (1984) that "'reasonable fees' … are to be calculated according to the prevailing private market rates in the relevant community, regardless of whether plaintiff is represented by private or non-profit counsel." 465. U.S. at 895. As in the present case, the prevailing party in *Blum v. Stenson* was represented by salaried attorneys employed by a non-profit legal services organization.

12. In this case, the biggest challenge imposed on Plaintiffs' attorneys was establishing liability and the amount of damages in the absence of timekeeping or payroll records for the Plaintiffs or even any trace of two of the Plaintiffs' employment. Defendants unreasonably resisted discovery, which made obtaining the scant documents available even more difficult. Thus, Plaintiffs' counsel had to reconstruct the working hours of the four Plaintiffs, each of whom worked for the Defendants at different times. Moreover, the issue in this case, the compensability of time spent by Plaintiffs waiting to be assigned carwashing work, was both novel and difficult to prove. Plaintiffs' counsel had to convince the jury that, given all the circumstances, which were hotly contested by the Defendants, the waiting time was predominately for the benefit of the employer.

13. Throughout the course of the litigation, Plaintiffs communicated to Defendants their willingness to strike a reasonable settlement in an effort to stimulate settlement negotiations.

Defendants never offered any pre-trial settlement proposal to the Plaintiffs. One of the central purposes of a statutory fee-shifting provision, such as the one in 29 U.S.C. § 216(b), is to encourage employees to assert meritorious claims and to encourage employers to attempt to resolve meritorious claims without prolonged litigation.

14.   As attested to in the attached affidavit of Carlos Hernandez, this case was undesirable because the total damages were small compared to the time needed to successfully prosecute the claims.  *See* Exhibits E.

15.   Plaintiffs' counsel has endeavored to exercise appropriate billing judgment with respect to all time submitted with this motion.  As noted in the affidavits submitted with this motion, the Plaintiffs have exercised billing judgment by subtracting, insofar as possible, time spent on the claims of the Plaintiffs who withdrew from the lawsuit.  Plaintiffs' counsel have also endeavored to subtract from their fee claim the time of multiple attorneys that may arguably have been redundant or unnecessary, while noting that in many instances it was consistent with the demands of reasonable professional representation for Plaintiffs to judiciously share responsibility among a *team* of attorneys.

16.   As Plaintiffs' counsel has subtracted time as appropriate to reflect the reasonable number of hours expended for each identified task, counsel for Plaintiffs has also eliminated substantial time in the exercise of good billing judgment.

17.   Moreover, Plaintiffs have submitted the affidavit of an experienced employment litigator in the relevant community who has testified that he has examined Plaintiffs' attorneys' time records and believes they are reasonable. *See* Exhibit E.

## Plaintiffs' Costs

18.     TRLA incurred $3,615.19 in costs in the prosecution of this matter. This amount includes the items listed in TRLA's Itemization of Costs, attached as Exhibit F.  These expenses were reasonable and necessary to the prosecution of this matter.

## Conclusion

19.     As set forth in the attached affidavits of Kelsey Snapp and Kathryn J. Youker, Texas RioGrande Legal Aid has incurred a total of $57,160.00 in attorneys' fees and $3,615.19 in costs and expenses.[9]

20.     Given the circumstances of this case, TRLA's total fees and expenses should be assessed against Defendant Arturo Kalifa and Defendant JAAAGS L.L.C. d/b/a/ Carwash Plus jointly and severally.

WHEREFORE, Texas RioGrande Legal Aid prays that the Court enter an order awarding Plaintiffs $57,160.00 in attorney's fees and $3,615.19 in costs against Defendant Arturo Kalifa and Defendant JAAAGS L.L.C. d/b/a/ Carwash Plus for the work performed by Texas RioGrande Legal Aid.

Dated:  December 13, 2013.

---

[9] In the event more costs and expenses are incurred in dealing with other substantive matters, Plaintiffs would request the opportunity to make a supplemental submission for the additional time and expenses spent.

Respectfully Submitted,

  *s/Kelsey Snapp*
Kelsey Snapp
State Bar No.: 24083882
S. Dist. N.: 1708797
TEXAS RIOGRANDE LEGAL AID, INC.
316 S. Closner
Edinburg, Texas 78539
Telephone: (956) 393-6200
Facsimile: (956) 383-4688
Attorney-in-Charge for Plaintiffs

  *s/Kathryn Youker*
Kathryn J. Youker
State Bar No.: 24014928
S. Dist. N.: 33655
TEXAS RIOGRANDE LEGAL AID, INC.
531 E. St. Francis St.
Brownsville, Texas 78520
Telephone: (956) 982-5540
Facsimile: (956) 541-1410
Attorney for Plaintiffs

## CERTIFICATE OF CONFERENCE

 I hereby certify that I attempted to confer with opposing counsel, Mr. Miguel Salinas, regarding this motion by email on December 12, 2013 and that Mr. Salinas did not respond. Therefore, it is assumed that this motion is opposed.

  *s/Kathryn Youker*
Kathryn Youker
Attorney for Plaintiffs

CERTIFICATE OF SERVICE

      I hereby certify that on the 13th day of December, 2013 a true and correct copy of the foregoing document was served on the following counsel of record for the Defendants via the Court's electronic case-filing system:

Attorney for Defendants
Miguel Salinas
Hernandez Law Firm, L.L.P.
P.O. Box 2999
Harlingen, TX 78551

                                    *s/Kathryn Youker*
                                    Kathryn Youker